**IN THE COURT OF APPEALS OF IOWA**

No. 25-1221
Filed October 1, 2025

**IN THE INTEREST OF G.H.-T.,**
**Minor Child,**

**P.T.-R., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka,

Judge.

        A mother appeals the termination of her parental rights to her son.

**AFFIRMED.**

        Gina L. Kramer of Kramer Law Office, PLLC, Dubuque, for appellant

mother.

        Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney

General, for appellee State.

        Myia E. Steines of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P.,

Dubuque, attorney and guardian ad litem for minor child.

        Considered without oral argument by Schumacher, P.J., and Badding and

Langholz, JJ.

**LANGHOLZ, Judge.**

A baby was removed from his mother's custody in July 2024 after he tested positive for cocaine at birth.[1]  The mother has a long history of substance-use issues, including the earlier removal of her older children from her custody. Although she was an attentive and caring mother during visits and attended many of her son's appointments for his developmental delays and physical ailments, she made essentially no progress in addressing her substance-use problem.  And so, the juvenile court terminated her parental rights to the son a year after his birth.

On our de novo review, we agree with the juvenile court.  Termination of the mother's parental rights is in the son's best interest given that he is flourishing in his foster home and the mother still struggles with her chronic substance use.  We do not doubt the mother loves her son.  But unfortunately, that is not enough—the son needs a permanent, safe home free from dangerous substances.  And her lack of progress addressing her substance use means we cannot find the son could be returned to her even with more time.  We thus affirm.

## I.      Factual Background and Proceedings

In July 2024, the mother gave birth to a son.[2]  She had no prenatal care during her pregnancy and tested positive for cocaine.  The son also tested positive for cocaine at birth, was removed from the mother's custody, and placed with a foster family.  At the time, the mother already had an open case with the Iowa

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

[2] The father's identity is unknown.  Due to notice issues, the rights of any putative father were not addressed at the termination hearing.

Department of Health and Human Services ("HHS") regarding an older child, with allegations of cocaine, alcohol, and marijuana use in the home. Many of her older children have been removed from her care and permanently placed with relatives. And her parental rights were terminated as to two of the older children.

The son suffers from some developmental delays and physical impairments requiring regular occupational and physical therapy appointments and medical examinations. The foster mother schedules most appointments relating to the son's medical needs, in part to accommodate her schedule and in part because the mother "has not been able to schedule them or refused to."

The mother was "very engaged" with the son at her visits, provided for the son's needs at visits, and completed a parenting program. Her interactions with the son were appropriate in terms of his medical diagnoses. The mother attended the medical appointments she could arrange transportation to, often riding with the foster mother. The mother has appropriate housing, with an adult child living with her and two of her teenage children visiting regularly. But she has not maintained stable employment and was not working at the time of the termination hearing and did not have reliable transportation.

The primary concern—as it has been since the son's birth—is the mother's substance use. She began an outpatient treatment program twice, but she was unsuccessfully discharged both times for failing to attend appointments. She only sporadically attended substance-use tests, and tested positive for cocaine in some tests, including one in the weeks before the termination hearing. The mother believes she does not need substance-use treatment. And while she had the option to increase visits by completing two negative drug tests in a row, she was

unable to do so in the ten months between removal and the termination hearing. At the time of the hearing, she was attending AA meetings online.

The juvenile court terminated the mother's parental rights under paragraphs "g," "h," and "*l*" of Iowa Code section 232.116(1) (2025). The court acknowledged the mother's "progress in almost all areas including being cooperative with services, consistently making her interactions, demonstrating appropriate parenting skills during those interactions, having the necessary supplies, and demonstrating a clear bond with the child." But she did not make progress with her substance use—the cause for the removal—and the court determined it could not find the need for removal would no longer exist at the end of an extension of time. The court concluded termination of the mother's parental rights was in the son's best interest. The mother appeals.

## II.     The Son's Best Interest

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show termination is in the best interest of the child. *Id.* And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The mother does not dispute the grounds for termination, so we need not address that issue. She instead challenges the second step—whether it is in the son's best interest to terminate her parental rights. She mainly focuses on the

strong bond she shares with her son, emphasizing "her ability to nurture her son by providing for him during visits and maintaining a stable, appropriate residence."[3]

The best interest of the child is the "paramount concern in a termination proceeding." *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We consider both the child's long-range and immediate best interest. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

We agree with the juvenile court that termination is in the son's best interest. HHS, the son's guardian ad litem, and the court-appointed special advocate all recommended termination citing the mother's lack of progress addressing her substance use and her transportation and employment instability. As the family-support worker who supervised visits observed at the termination hearing, "They do have a bond, but [the mother] has not addressed why the case opened." And we do not think their bond is at a level that termination would be detrimental to the son. The son has thrived in his foster placement, getting the consistent medical and therapeutic help he needs to address his needs. He has integrated into the foster family, and they are willing to adopt him. *See* Iowa Code § 232.116(2)(b). Considering the son's need for a safe, nurturing, and stable home, we find termination of the mother's parental rights to be in the son's best interest.

---

[3] Because the mother did not separately enumerate the permissive parent-child bond exception to termination as one of her two claimed issues on appeal, we consider her argument about the parent-child bond only as a best-interest challenge. *See In re L.A.*, 20 N.W.3d 529, 534 n.2 (Iowa Ct. App. 2025) (en banc).

### III.    Additional Time for Reunification

The mother also asserts the juvenile court should have granted her an extension of time given her progress and the necessity for a second termination hearing for putative fathers scheduled for August 2025.  *See* Iowa Code §§ 232.117(5), 232.104(2)(b); *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021).  In her closing argument below, the mother argued an extension would allow more frequent drug testing and allow her to reenter substance-use treatment.

While sympathetic to this position, we agree with the family-support worker that the mother is unlikely to change—even if given more time.  "[W]e cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

The mother's substance use has been a problem for many years.  She has had three children test positive for cocaine at birth in 2017, 2021, and 2024, and those other children have all been removed from her home.  During this case, she started and abandoned treatment twice, relapsing less than a month before the termination hearing.  To grant an extension, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes" for removal to no longer be needed at the end of the extension.  Iowa Code § 232.104(2)(b).  The removal here was based on the mother's substance use, and we cannot find it would no longer exist after six more months.  And so, we affirm the juvenile court.

**AFFIRMED.**